IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DAWN EDYTHE CAMPBELL,                )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    Case No. 16 C 8005
                                     )
KENNETH R. CAMPBELL, and             )
CAMPBELL PROFESSIONAL                )
SERVICES, LLC,                       )
                                     )
          Defendants.                )


**MEMORANDUM OPINION AND ORDER**

Plaintiff Dawn Campbell ("plaintiff") has sued her former

spouse, Kenneth Campbell ("defendant"), and his company,

Campbell Professional Services LLC ("the company") for

defamation.[1] Defendant has moved to dismiss for lack of personal

jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of

Civil Procedure. In the alternative, he moves pursuant to 28

U.S.C. § 1404(a) to transfer the venue to the District of

Minnesota.[2] For the reasons below, the motion is denied.

---

[1] Although there are numerically two defendants -- Mr. Campbell
and his company -- Campbell is the company's sole member and
owner, *see* Aff. of Kenneth Campbell, Defs.' Mot. to Dismiss, Ex.
B ¶ 5, and only he only is alleged to have directly engaged in
tortious conduct. For these reasons, the discussion that follows
focuses chiefly on Campbell, and I therefore refer to him as
"defendant."

[2] The title of defendant's motion purportedly seeks transfer
based on *forum non conveniens*. As the Seventh Circuit has
explained, the "common law doctrine of *forum non conveniens* has

Plaintiff's complaint alleges that she and defendant divorced in 2004. In July 2015, she moved from Minnesota to Illinois to take a job with Inland Real Estate Investment Corporation ("Inland"). In January 2016, defendant sent a series of emails to Inland containing allegedly defamatory statements about plaintiff. Defendant states (and plaintiff does not dispute) that he authored and sent the messages from Shoreview, Minnesota. Among other things, the emails state that plaintiff had previously "sold securities without a license for many years" and had "perpetrated fraud against [i]nvestors" while working for a former employer. *See* Compl. Ex. D. Defendant also stated that plaintiff was a "bad gambler," was "not credit-worthy," and was a "high-risk person." *Id*. The first of the messages was submitted to Inland via Inland's website. Two subsequent messages were sent directly to the email account of

---

continuing application in federal courts only in cases where the alternative forum is a foreign one. Otherwise, if the issue is one of convenience within the United States federal court system, the Federal Rules of Civil Procedure allow for transfer, rather than dismissal, when a sister federal court is the more convenient forum." *Deb v. SIRVA, Inc*., 832 F.3d 800, 805 n.2 (7th Cir. 2016). Since defendant seeks transfer of the suit to Minnesota rather than dismissal and refiling in a foreign country, the doctrine of *forum non conveniens* is not applicable here. In the body of his brief, defendant addresses only the requirements for transfer pursuant to the federal change-of-venue statute, 28 U.S.C. § 1404, and does not mention the *forum non conveniens* doctrine.

plaintiff's superior, Rod Curtis ("Curtis"). In addition, defendant sent complaints about plaintiff to the Securities and Exchange Commission (SEC) and the Financial Industry Regulatory Authority (FINRA). Defendant does not deny sending the messages. He denies that the statements are defamatory, however, because he claims that they are true.

II.

**A.    Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant first argues that plaintiff's complaint should be dismissed because this court lacks personal jurisdiction over him and his company. "The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, therefore, I "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.*[3]

---

[3] Typically, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). Here, plaintiff has not submitted an affidavit in response to defendant's motion. This is ultimately of no consequence, however, because the averments in the

3

"Courts recognize two types of personal jurisdiction: general and specific." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015). "General jurisdiction is 'all-purpose'; it exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Id*. (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014)). "Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum." *Id*.

Here, plaintiff argues only that the court has specific personal jurisdiction over defendant. Specific personal jurisdiction is established where three conditions are met: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted). I consider each of these requirements in turn.

## 1.   Purposeful Direction

defendant's affidavit are either conclusory or, even if true, do not affect whether personal jurisdiction is proper here.

The Seventh Circuit has "distilled three requirements ... for determining whether conduct was purposefully directed at the forum state: (1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt -- that is, the plaintiff would be injured -- in the forum state." *Id.* at 674-75 (quotation marks omitted).

These requirements are met here. There can be no question that defendant acted intentionally in composing and sending the emails. It is likewise clear that defendant's conduct was expressly aimed at Illinois. He sent the emails directly to Inland, which is located in Illinois. And defendant knew (or at least intended) that plaintiff would be injured in Illinois. *Cf.* Compl. Ex. B, Email from Kenneth Campbell to Dawn Campbell (Jan. 25, 2016) ("[A] good fate for you would be panhandling on the streets of Chicago. Then you could compete with rats like you."). The purpose of his messages was clearly to bring her into disrepute with her employer and to get her fired.

Defendant argues that his conduct was not expressly directed toward Illinois because he did not know where Curtis lived or where he would open the emails. *See* Defs.' Mot. to Dismiss, Ex. B, Kenneth Campbell Aff. ¶ 14 ("As to the communications and emails I sent to Inland Real Estate Corporation, I had no personal knowledge as to where those

communications or emails would be received or opened by Rod Curtis or any other representative of Inland Real Estate Corporation."). He argues that under *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), the fact that the email might have been opened anywhere means that he did not expressly aim his conduct at Illinois. *Advanced Tactical* was a trademark infringement suit in which the defendant, Real Action, was alleged to have sent two misleading emails to a list of subscribers. The plaintiff argued that specific personal jurisdiction could be exercised over Real Action in Indiana based on the fact that Indiana residents were among the emails' recipients. The court disagreed, stating:

> The fact that Real Action maintains an email list to allow it to shower past customers and other subscribers with company-related emails does not show a relation between the company and Indiana. Such a relation would be entirely fortuitous, depending wholly on activities out of the defendant's control. As a practical matter, email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the "send" button, and it winds up wherever the recipient happens to be at that instant. The connection between the place where an email is opened and a lawsuit is entirely fortuitous. We note as well that it is exceedingly common in today's world for a company to allow consumers to sign up for an email list. We are not prepared to hold that this alone demonstrates that a defendant made a substantial connection to each state (or country) associated with those persons' "snail mail" addresses."

*Id.* at 803.

The communications in this case bear little similarity to those in *Advanced Tactical*. Inland was not one of a long list of email recipients located throughout the country. Defendant sent the messages in question specifically and (with the exception of the SEC and FINRA complaints) exclusively to Inland. His contact with Illinois was not fortuitous and was entirely within his control. The bare possibility that Curtis might have opened and read the emails in another state does nothing to change this fact. *See, e.g.*, *Felland*, 682 F.3d at 676 n.3 ("Of course, email accounts can generally be accessed in any state, so it may not make much sense to say that they were sent to a Wisconsin address. Nevertheless ... [defendant] purposefully sent these emails to Wisconsin residents knowing that they would most likely be read and have their effect in Wisconsin. This manner of communication is similar to mailed letters or telephone calls, so the emails are properly considered as contributing to [defendant's] minimum contacts with the forum state.") (quotation marks omitted). In any case, while two of the defamatory emails were sent to Curtis's email account, the first was submitted to Inland directly via Inland's website. Thus, even if Curtis might have accessed or opened the emails in a location other than Illinois, there is no reason to believe that the first message was opened anywhere other than Illinois.[4]

_____

[4] Defendant points out that the first message does not

I conclude that the purposeful-direction requirement is met here.

**2.    Defendant's Forum-Related Activities**

Specific personal jurisdiction is proper only where the "relation between the defendant and the forum [arises] out of contacts that the defendant *himself* creates with the forum.... Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Advanced Tactical*, 751 F.3d at 801 (citation and quotation marks omitted). Here, defendant's contact with Illinois resulted from his own actions. This is not a case in which a defendant posted defamatory statements on a website that was accessed through the online activity of others. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.").

specifically mention plaintiff by name. Despite defendant's suggestion to the contrary, this does not mean that the communication cannot be defamatory or even defamatory per se. The Seventh Circuit has specifically held that "a federal plaintiff can proceed with a per se defamation claim based on a statement that does not directly name her if she can identify enough 'similarities' that 'a reasonable person in the community [could] believe that [the statement] was intended to ... refer to [her].'" *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 729 (N.D. Ill. 2015) (quoting *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003)). Whether such similarities can be found in the first message pertains to the merits of plaintiff's claim and is not at issue here.

Nor is this a case in which the defendant's emails were originally received in other states or locations and subsequently forwarded to Illinois. *See, e.g.*, *Headstrong Corp. v. Jha*, No. CIVA 305CV813-HEH, 2007 WL 1238621, at *4 (E.D. Va. Apr. 27, 2007) (no personal jurisdiction where defamatory emails were not expressly directed at Virginia, but instead were merely re-published in Virginia "after being forwarded by innumerable individuals from India across the world"). The messages in question were sent directly to Illinois by the defendant himself. Hence, the requirement that the plaintiff's injuries be the result of the defendant's forum-related activities is met here.

### 3. Fair Play & Substantial Justice

The final question is whether traditional notions of fair play and substantial justice would be offended if the defendant were haled into court in this district. In conducting this inquiry, courts take account of several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (quotation marks omitted). "[W]here a defendant

who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quotation marks omitted).

Defendant has not discussed why it would be unreasonable in light of these factors (or any others) to exercise jurisdiction over him in Illinois. He asserts only that "[f]air play and substantial justice require more than a mere fortuitous opening of an email." Defs.' Mot. to Dismiss at 10. As already explained, there was nothing fortuitous about where defendant's emails were sent to or received. An individual who sends to another person's employer messages like the ones at issue here can reasonably expect to be haled into court where the messages were sent.

In short, all three of the conditions necessary for specific personal jurisdiction are present here. Other courts have found specific personal jurisdiction proper over a defendant based on facts similar to those here. *See Strabala v. Zhang*, No. 15 C 1228, 2016 WL 6822664, at *21 (N.D. Ill. Nov. 18, 2016) (personal jurisdiction over Chinese citizens who sent defamatory emails to plaintiff's business and professional associates, including recipients in Chicago); *Hoffman v. Bailey*, 996 F. Supp. 2d 477, 481 (E.D. La. 2014) (personal jurisdiction proper based on defendant's defamatory email to an employee of

the Louisiana State Historic Preservation Office while
plaintiffs were in the process of applying for Louisiana
historic rehabilitation tax credits on the Property.); *Nw.
Voyagers, LLC v. Libera*, No. CV09-378-C-EJL, 2009 WL 3418199, at
*6 (D. Idaho Oct. 19, 2009) ("Given this case law, the Court
finds that the Defendants' dissemination of the allegedly
defamatory statements, by email and posting on web sites, was
expressly aimed at the Plaintiff in Idaho, actions were felt by
Plaintiff in Idaho, as the Defendants intended.").

**4.    Additional Arguments**

In addition to the foregoing arguments, defendant contends
that personal jurisdiction over him is lacking because
defamation requires proof that the defamatory statements were
published to a third party. According to defendant, plaintiff
"fails to provide any evidence that the emails sent through
Inland's interactive website were actually published to a third-
party in Illinois." Defs.' Reply Br. at 5. Defendant further
points out that in one of the emails attached as an exhibit to
plaintiff's complaint, plaintiff told him that Inland had
blocked his emails. If the messages were never actually received
or read by anyone else, he argues, plaintiff could not have been
defamed.

This argument addresses the merits of the plaintiff's
claim, not whether the court has personal jurisdiction over him.

At this stage, plaintiff is not required to offer proof or evidence to support her claim on the merits. She need only make out a prima facie case that the jurisdictional requirements are met. The fact that the messages were sent directly to Inland and Curtis is enough to support the inference that the messages were indeed read and therefore published. I note, however, that defendant's own emails cast doubt on the notion that his messages were in fact blocked by Inland. In an email to Curtis, defendant himself indicated that he did not believe the messages had been blocked. *See* Compl. Ex. C, Email from Kenneth Campbell to Rod Curtis (Jan. 26, 2016) ("Dawn tells me that you have blocked my e-mails. Of course. I know that Is [sic] not true."). Moreover, any blocking of defendant's emails would have occurred only after he had submitted the initial message or messages via Inland's website. Inland thus would have received at least one defamatory communication regardless of whether defendant's later emails were blocked.

Defendant also separately contends that even if the court has personal jurisdiction over him, it lacks personal jurisdiction over his company. I disagree. A court may exercise personal jurisdiction over a company based on the actions of its agents. *See, e.g.*, *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002) ("For purposes of personal jurisdiction, the actions of an agent may be attributed

to the principal."); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001) (personal jurisdiction was proper over law firm based on paralegal's actions in requesting plaintiff's credit report). Plaintiff's complaint specifically alleges that defendant was acting as an agent of the company when he sent the defamatory emails. To be sure, defendant's affidavit states that "[a]ny opinions about the Plaintiff's actions and activities ... contained in email communications to Inland Real Estate Corporation are my personal opinions, and not those of Campbell Professional," Compl. ¶ 12, and that the "emails and complaints in question were prepared and sent by me personally and not in any way on behalf of or as part of the business activities of Campbell Professional," *id*. ¶ 13. As plaintiff points out, however, the company's name is included in the signature line of each of the emails defendant sent to Inland. This is sufficient to make out a prima facie case that defendant was acting as the company's agent in sending the communications and hence that personal jurisdiction is proper over both him and his company.

For these reasons, I conclude that the court has specific personal jurisdiction over defendant. Accordingly, his motion to dismiss for lack of personal jurisdiction is denied.[5]

---

[5] Defendant also briefly argues that, because personal jurisdiction is lacking, the complaint must be dismissed for

**B.    Motion to Transfer**

In the alternative, defendant requests that plaintiff's suit be transferred to the District of Minnesota. The federal change-of-venue statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, transfer is appropriate where: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of parties and witnesses; and (3) transfer is in the interests of justice." *Methode Elecs., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009) (quotation marks omitted). "It is the movant's burden to show that transfer is appropriate." *Id*.

Since venue is proper in both Illinois and Minnesota, I need consider only whether transferring the suit to Minnesota would be more convenient and would promote the interests of justice. As discussed below, I conclude that transfer would not serve either of these ends.

**1.    Convenience of the Parties and Witnesses**

"The following factors determine the convenience to the parties and witnesses: (1) the plaintiff's choice of forum; (2)

---

lack of venue. Having concluded that personal jurisdiction is not lacking, this argument requires no further discussion.

the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses." *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC,* No. 16 C 8306, 2017 WL 372313, at *5 (N.D. Ill. Jan. 26, 2017) (citing *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010)). On balance, these factors weigh against transfer.

**(a) Plaintiff's Choice of Forum**

"There is a strong presumption in favor of the plaintiff's choice of forum if it is where the plaintiff resides." *Basile v. Prometheus Glob. Media, LLC*, No. 15-CV-10138, 2016 WL 2987004, at *5 (N.D. Ill. May 24, 2016) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quotation marks omitted). Since the plaintiff resides in this district, this factor weighs heavily against transfer.

**(b) Situs of Material Events**

Defendant maintains that Minnesota is the location of material events because he composed and sent the emails from Minnesota. However, the tort of defamation occurs where the plaintiff's injury was suffered. *See, e.g.*, *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994) ("The tort of

defamation would therefore occur in the state or states in which the victim loses personal or as here professional transactions or transactional opportunities because of the impairment of his reputation brought about by the defamatory statement."). Plaintiff lives and works in Illinois. Thus, any personal or professional harm she has suffered would have occurred primarily, if not exclusively, in Illinois. Hence, this factor, too, weighs against transfer.

**(c)  Relative Ease and Access to Sources of Proof**

The only sources of proof identified by defendant are documentary in nature. He claims that all or most of the documents necessary to prove the truth of his statements about plaintiff are located with plaintiff's former colleagues and business associates in Minnesota. The truth vel non of defendant's statements, however, is only one issue that will require evidentiary support in the case. Evidence as to the publication of the defendant's statements and to plaintiff's resulting injuries will also be necessary.[6] *See, e.g.*, *Floss v.*

---

[6] Since plaintiff asserts a claim for defamation per se, she would not be required to prove actual damages. *See, e.g.*, *Berlant v. Goldstein*, 2016 IL App (2d) 151176-U, ¶ 36 ("[A] properly pleaded claim for defamation per se relieves the plaintiff of proving actual damages."). However, plaintiff would still need to offer evidence as to the amount of her damages. *See, e.g.*, *Macklem v. Pearl*, No. 10 C 830, 2011 WL 2200037, at *4 (N.D. Ill. May 31, 2011) ("[W]hile damages are presumed in an action for defamation per se, the amount of damages is still an evidentiary issue.").

*Chicago Ass'n of Realtors*, 2015 IL App (1st) 143218-U, ¶ 52 ("To state an action for defamation per se, a plaintiff must allege: facts showing the defendant made a false statement about the plaintiff; the defendant made an unprivileged publication of that statement to a third party; and that this publication caused damages."). Defendant has given no reason to think that evidence relating to the latter issues would be found in Minnesota as opposed to Illinois. And in any case, in "an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Rhoda v.* Rhoda, No. 14-CV-6740 CM, 2014 WL 6991502, at *11 (S.D.N.Y. Nov. 19, 2014) (quotation marks omitted). Hence, the location of the sources of proof does not weigh in either party's favor.

**(d)  Convenience of the Parties**

The defendant asserts that being forced to litigate in Illinois would be very burdensome to him but he fails explain why it would be any less burdensome for plaintiff to litigate in Minnesota. Defendant claims that litigating in Illinois would hinder his "ability to carry out his responsibilities with the Company would be negatively affected and cause substantial hardship to the Company." Defs.' Mot. to Dismiss at 13-14. However, he provides no reason for thinking that it would be any easier for plaintiff to tend to her professional

responsibilities if the suit were transferred to Minnesota. Overall, therefore, this factor is neutral.

### (e) Convenience of the Witnesses

Defendant has identified fifty-three potential witnesses whom he might call to testify in his defense. The vast majority of the witnesses live in Minnesota (although some are located in other states, including a few in Illinois). Defendant therefore maintains that transferring the suit to Minnesota would be far more convenient for the witnesses.

This argument is problematic for several reasons. First, the notion that fifty-three witnesses would actually be needed to testify on defendant's behalf cannot be taken seriously. According to the list provided by defendant, all of the witnesses would offer testimony as to the truth of his statements. Inevitably, therefore, a great deal of the witnesses' testimony would be cumulative. Second, as previously noted, the truth of defendant's statements is only one issue arising in this dispute. Plaintiff will need to present evidence concerning the elements of publication and harm, which may require testimony from witnesses in Illinois. And finally, while defendant has identified a large number of potential witnesses, "the convenience of the witnesses ... is not decided by comparing the length of the parties witness lists, but quality of their testimony on the pertinent issues." *Hearthside Baking*

*Co. v. Bader's Dutch Biscuit Co.*, No. 95 C 834, 1995 WL 431259, at *4 (N.D. Ill. July 19, 1995). Transferring the suit to Minnesota might well be more convenient for the witnesses. But this factor does not weigh as strongly in defendant's favor as a numerical count of witnesses would suggest.

Based on the foregoing, I conclude that the convenience factors weigh decisively against transfer. The only factor potentially supporting transfer is the convenience of the witnesses. This is not sufficient to overcome the strong weight accorded to the plaintiff's choice of forum, particularly when coupled with the fact that Illinois is the locus of material events.

## 2. Interests of Justice

In determining whether transfer would serve the interests of justice, "courts look to factors including (1) docket congestion and likely speed to trial, (2) each court's relative familiarity with the relevant law, and (3) the respective desirability of resolving controversies in each locale." *Nagle v. The Hartford Life & Accident Ins. Co.*, No. 15-CV-6073, 2015 WL 9268420, at *3 (N.D. Ill. Dec. 21, 2015). On the whole, these factors militate against transfer, or at the very least, do not favor transfer.

### (a) Familiarity with Applicable Law

The districts' familiarity with the relevant law does not factor significantly in the analysis. Given the relative similarity of defamation law across jurisdiction, the parties have offered no reason to think that one forum might be more familiar with the applicable law than the other.

**(b)    Docket Congestion & Speed to Trial**

"To evaluate the speed at which a case will proceed, courts look to two statistics: (1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *AL & PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *5 (N.D. Ill. Feb. 19, 2015) (quotation marks omitted). The defendant notes that the time to disposition in shorter in this district than in Minnesota, while the time to trial is quicker in Minnesota than in Illinois.[7] Where the two statistical

---

[7] Defendant's brief relies on the Federal Court Management Statistics reported as of June 2016, according to which the median time to disposition was 7.3 months in Illinois and 14.8 months in Minnesota (a difference of 7.5 months); and the median time to trial was 38.4 months in Illinois and 27.7 months in Minnesota (a difference of 10.7 months). *See* United States Courts, *U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2016)) at http://www. uscourts.gov/sites/default/files/data_tables/fcms_na_distcompari son0630.2016.pdf. More recent statistics were reported in September 2016. According to these, the median time to disposition is 7.3 months in Illinois and 8.8 months in Minnesota (a difference of 1.5 months); and the median time to trial was 39.4 months in Illinois and 30.1 months in Minnesota (a difference of 9.3 months). *See* United States Courts, *U.S. District Courts–Combined Civil and Criminal Federal Court*

measures point in different directions, some courts have held

that they cancel one another out. *See, e.g.*, *Sec. & Exch. Comm'n*

*v. RPM Int'l, Inc.*, No. CV 16-1803 (ABJ), 2016 WL 7388284, at *5

(D.D.C. Dec. 20, 2016) ("Because these statistics essentially

cancel one another out, this factor is neutral."). Other courts,

however, have held that the time to disposition is the more

important metric. *See, e.g.*, *AL & PO Corp.*, 2015 WL 738694, at

*5 (holding that the time to disposition is more important than

time to trial); *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157

F. Supp. 3d 383, 391 (D.N.J. 2015) ("[B]ecause both Districts

resolve relatively few cases by trial, the median time to

disposition for all cases, not just trials, provides the more

relevant measure of court congestion and speed to resolution of

the average case."). In either case, considerations of docket

congestion and speed to trial do not counsel in favor of

transfer.

**(c)    Districts' Interest in Resolving the Dispute**

Illinois has a particular interest in the resolution of

this dispute. As a general matter, Illinois "has a strong

---

*Management Statistics* (September 30, 2016) at http://www.
uscourts.gov/sites/default/files/data_tables/fcms_na_distcompari
son0930.2016.pdf. Thus, the more recent data indicate that the
difference in time to disposition has narrowed while the
difference in time to trial is roughly the same. Nevertheless,
as explained above, time to disposition is the more significant
factor. Thus, the fact that the time to trial is longer Illinois
than in Minnesota does not weigh heavily in favor of transfer.

interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state." *Felland*, 682 F.3d at 677. Here, however, Illinois also has a more particular interest in providing the plaintiff with the opportunity to vindicate her reputation in the location in which it was damaged.

In sum, the interests of justice weigh against transfer of this action, or at least do not weigh in favor of transfer. Thus, when all of the relevant factors are taken into consideration, it is clear that defendant has failed to show that transferring this suit would be more convenient or would promote the interests of justice. Accordingly, defendant's motion to transfer is denied.

### Conclusion

For the reasons above, the defendants' motion to dismiss or transfer is denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: February 3, 2017